ROBERTS, Justice.
Claimant is a white male laborer in his early forties who was employed to drive a truck and to pack and stack furniture and equipment for a transfer company. He testified that while at work on June 3, 1960 he suffered a sharp pain in his chest after carrying materials weighing fifty-seventy-five pounds up four flights of stairs. He testified that thereafter and until August 30, 1960 he occasionally experienced sharp pains while at work but felt relief after resting. On August 30, 1960, when working on a very hot day, he became ill and asked to go home. He contacted a doctor’s office but was unable to see the doctor until the following day. The doctor testified that he sent the claimant home with in *811 structions to go to bed, but upon emergency call admitted him to the hospital that night and began treatment for myocardial infarction.
A claim for compensation was filed, and after taking extensive testimony the deputy commissioner awarded claimant compensation for temporary total disability and for a fifty percent permanent partial disability of the body as a whole. Upon review the full commission vacated the order and held that “the deputy commissioner should have made a specific finding of fact as to whether or not the claimant was, at the time of the incidents, subject to unusual or overexertion not routine to the type of work he was accustomed.” Victor Wine & Liquor, Inc. v. Beasley, Fla., 141 So.2d S81 (1962). The commission also directed the deputy’s attention to Hampton v. Owens-Illinois Glass Co., Paper Prod. Div., 140 So.2d 868 (Fla.1962) “which relates to the method of determining acceleration of a pre-existing condition”. After remand the cause was considered by a deputy commissioner who succeeded the former in office. It was stipulated that the deputy could consider the testimony, evidence and stipulations previously offered and enter such order as the deputy felt within the law and facts of the case. The deputy reviewed the cause and found “That on June 3, 1960 the claimant, Jehu Wilkes, sustained an accident arising out of and in the course of his employment with Oscar’s Transfer Company when, while carrying bundles of angle iron weighing between fifty to seventy-five pounds apiece up four flights of stairs, he felt severe chest pains which he had never experienced prior to June 3, 1960.” and further, “It is the express finding of the undersigned Deputy Commissioner that the exertion experienced by the claimant on June 3, 1960 in carrying angle irons of the weight described up four flights of stairs constituted an unusual strain not routine to the type of work claimant was accustomed to performing and was unusual exertion for the claimant in that the bulk of the angle irons described were raised to the top of the building in question by a hoist.” The deputy found that the claimant suffered a fifty percent permanent partial disability to the body as a whole, that the claimant is seventy-five percent disabled, twenty-five percent of which is due to a pre-existing condition and fifty percent attributable to the aggravation of the condition.
Upon review the full commission found “the deputy’s findings of fact are not supported by competent substantial evidence * * * ”, reversed the order of the deputy commissioner and dismissed the claim.
We must decide whether the order of the deputy commissioner accords with the essential requirements of the law in the light of our previous decisions. Hardy v. City of Tarpon Springs, 81 So.2d 503 (Fla.1955) and United States Casualty Company v. Maryland Casualty Company, 55 So.2d 741 (Fla.1951), and whether the requirements of Victor Wine & Liquor, Inc. v. Beasley, supra, and Hampton v. Owens-Illinois Glass Co., supra, were met.
After oral argument and a careful examination of the record we conclude that there is ample competent evidence to support the order of the deputy. The claimant testified that he suffered his first pain after carrying “this material- up four flights of stairs.” He testified that it was only the one day that he carried the items up the stairs, that it took four men about four hours, and that after suffering pain he went “back to the truck and sat down and it finally stopped.” In answer to the question of whether “carrying this equipment up the stairs was more or less what (you) were normally or usually required” he replied, “Maybe it was a little more, but I couldn’t say, it really was”. The treating physician said that claimant “had a tendency to minimize symptoms rather than magnify” them, and that most people would have stopped work with the pain that claimant was experiencing but claimant continued work until “he finally had to give up and admit he had to get help for it.” The record shows that the labor involved on the day claimant experienced *812 his first severe pains was not routine because “[i]t was the only building with stairs in it. The rest of the time it [place of delivery] was on the first floor.”
Mrs. Thomas, co-owner of the respondent transfer and storage company testified in answer to the question, “Then you can say that no equipment was carried up the stairs?” she replied “Nothing but small boxes.” We learn that Mrs. Thomas described small boxes in this manner: “* * we had 75 and 20 and 32 pounds, 65 pounds — we had quite a lot of small packages.” Two co-workers testified that the claimant carried angle irons up the stairs. There is evidence that the day on which claimant became too ill to work and finally decided to seek medical aid was an extremely hot August day, that a hoist was used to lift exceptionally heavy cartons that could not be carried up the elevator, and that inside the windowless trailer in which claimant was working the temperature was unusually hot. Thus, there is competent substantial evidence that claimant was carrying heavy packages up several flights of stairs which was an unusual strain not routine to the type of work claimant was accustomed to performing. Both deputy commissioners made the finding that claimant had thus experienced an industrial accident precipitated by the additional exertion. It appears that the deputy determined the precipitation of the attack occurred at the date in June after the unusual exertion of carrying packages up the stairs because of the testimony concerning pain experienced thereafter. A subsequent accident may have occurred in August in extreme heat when heavy packages were being hoisted to upper floors. The fact of these two incidents has caused some confusion in the record, but the treating physician testified that either the August date or the June date would be compatible with his diagnosis that claimant suffered a myocardial infarction. Another doctor testified, “Within the realm of medical terminology, I do not believe that the work that this patient was doing precipitated either his angina pectoris, coronary insufficiency, or the myocardial infarction. However, I do believe that it is entirely within the realm of medical probability that the work that he was doing aggravated and accelerated an already preexisting condition, and, therefore, aggravated and accelerated the presence of angina and also the resultant coronary occlusion.” This statement was in answer to a question assuming that claimant was carrying equipment weighing fifty-seventy-five pounds up four flights of stairs on a very hot day.
Whether we or the full commission would have believed the testimony of the claimant, and his co-workers regarding unusual strain not routine to his type of work or whether we or the full commission would have believed the two doctors who testified that in their opinion claimant’s employment aggravated his pre-exist-ing condition is not determinative of the issues here. The question is whether there is competent substantial evidence to support the findings of the deputy. Under the Workmen’s Compensation Act, as amended, the deputy commissioner is charged with the duty of holding a hearing and making findings of facts and his findings are entitled to great weight and will not be reversed unless there is no competent evidence to support his order. United States Casualty Co. v. Maryland Casualty Co., supra. It is interesting to note that two deputy commissioners after full review of the facts arrived at the conclusion that the claimant should be awarded compensation, although two opposing medical views have been injected in the record as to the cause of myocardial infarction.
We have examined the record and find that the deputy commissioner properly applied the principle of Hampton v. Owens-Illinois Glass Co., Paper Prod. Div., supra, regarding the method of determining acceleration of a pre-existing condition and have found competent evidence to substantiate the order of the deputy.
*813 Accordingly, on the basis of the foregoing decisions, the order of the respondent Commission is quashed and the cause is remanded with directions to reinstate the order of the deputy commissioner.
It is so ordered.
DREW, C. J., and THORNAL and SEB-RING (Ret.), JJ., concur.
THOMAS, O’CONNELL and CALDWELL, JJ., dissent.