HAWKES, J.
Claimant Michael Perdue, a deliveryman for Appellant Coca-Cola Bottling Company, suffered a myocardial infarction while delivering cases of Coca-Cola. A cardiac catheterization revealed an occlusion of the right coronary artery. Claimant sought workers’ compensation benefits. The Judge of Compensation Claims (JCC) concluded the claim was compensable under Victor Wine & Liquor, Inc. v. Beasley, 141 So.2d 581 (Fla.1962),[1] finding Claimant suf *75 fered a heart attack caused by unusual work-related exertion. We conclude the JCC applied the Victor Wine test incorrectly. Consequently, we reverse and remand for additional proceedings.
It is undisputed that Claimant had preexisting heart disease. Thus, his heart attack is compensable under Victor Wine “only if the employee was at the time subject to unusual strain or over-exertion not routine to the type of work he was accustomed to performing.” Id. at 589 (emphasis added).
In determining whether the employee was subjected to unusual strain or over-exertion, the analysis is not “solely predicated on the broad question of what was routine to the claimant; rather, that inquiry must necessarily be circumscribed by a consideration of what was routine to the job the claimant was accustomed to performing.” Skinner v. First Fla. Bldg. Corp., 490 So.2d 1367, 1369 (Fla. 1st DCA 1986). The court must “examine the work done by the employee as an entirety, rather than some isolated segment of his activities.” Yates v. Gabrio Elec. Co., 167 So.2d 565, 567 (Fla.1964). Victor Wine requires the employee to show physical activity beyond his accustomed performance in either the scope or nature of his work.
In examining the employee’s work in its entirety to determine what constitutes a routine work day or a day that does not involve unusual strain or over-exertion, an evaluation of the range of days the employee experiences is necessary. The employee may have days involving more arduous activity than other days, and days that involve less arduous activity than other days. All of these days must be considered, or the evaluation would impermissi-bly be made “on some isolated segment of [the employee’s] activities.” Id. It is this combination of the more arduous days and the less arduous days to which an employee may typically be exposed that result in what may be called the routine or average job the claimant is accustomed to performing. Whenever the claimant’s work requirements fall within the range between the less arduous days and more arduous days, the employee is not subject to unusual strain or over-exertion.
Here, Claimant was not doing any unusual activity or activity of a different nature. He was delivering cases of Coca-Cola as he did every day. He argues that the determination of whether he was subject to unusual strain or over-exertion should be based on an evaluation of the number of cases of Coca-Cola he delivered, a claim under Victor Wine based on the scope of his work. This evaluation is performed by looking at the day he suffered the myocardial infarction, and comparing the number of cases he delivered that day to range of cases he was accustomed to delivering.
Consequently, to evaluate his claim, the JCC must also have evidence of the scope of Claimant’s work, here, the number of *76 cases of Coca-Cola Claimant would be accustomed to delivering on the range of days he worked. A less arduous day would require delivering fewer cases, and a more arduous day would require delivering more cases. Any day requiring delivery of a number of cases within this range cannot be found to have required unusual strain or over-exertion.
Here, conspicuously absent from the record is evidence reflecting the average number of cases Claimant was accustomed to delivering on a daily basis, or the number of cases he delivered on the less arduous and more arduous days. These figures are crucial to a determination of whether the scope of Claimant’s work activities giving rise to his myocardial infarction were unusual requiring over-exertion, and were, therefore, not routine to his work. To calculate Claimant’s daily average, both peak delivery days and low delivery days must be included.
For example, if 600 is the largest number of cases a particular employee is accustomed to delivering on a given day, and 300 is the fewest number of cases the employee is accustomed to delivering on a given day, the employee’s daily average would be 450. Assuming a sufficient work history, approximately one-half of the employee’s days, he would be accustomed to delivering between 450 and 600 cases (more arduous), and approximately one-half of the employee’s days, he would be accustomed to delivering between 300 and 450 cases (less arduous).
To qualify as an unusual exertion beyond the scope of the employee’s job, the employee would have to establish that he was required to deliver a number of cases exceeding, in a statistically significant manner, the larger number of cases he would have been accustomed to delivering on one of his peak days.
Stated differently, a claimant would not meet his burden under Victor Wine by establishing he had a demanding, although not an aberrationally arduous, day. Under the 300-600 case hypothetical, it would not be sufficient for the employee to merely establish that he delivered more than his 450 average number of cases. If that were so, an employee would be entitled to compensation for half of the days he performed his normal duties, but not the other half. The Victor Wine rule does not allow compensation when an employee establishes his day’s work merely required performance in his average to peak range. Victor Wine requires claimants to show physically demanding activity outside the scope or nature of their routine work activities. See, e.g., Walker v. Friendly Village of Brevard, 559 So.2d 258 (Fla. 1st DCA 1990); Silvera v. Miami Wholesale Grocery, Inc., 400 So.2d 439 (Fla.1981).
Here, there is no evidence as to what constitutes Claimant’s routine or average day and what figures make up those calculations in order to show the scope of his activities, nor is there any evidence that his duties were altered to create more arduous activities of a different nature. Consequently, there is no competent, substantial evidence that Claimant’s myocardial infarction was caused by unusual strain or over-exertion not routine to his work.
Claimant’s reliance on Gardinier v. Coker, 564 So.2d 254 (Fla. 1st DCA 1990), is misplaced. Although the facts in Gardinier suggest merely a heavier workload on the day in question, which may not meet the Victor Wine test, there was also testimony that the claimant experienced equipment problems that made his job “10 times harder.” Id. at 255. This court affirmed the JCC’s conclusion that the claimant’s heart attack was compensable, finding it was “clear from the evidence” that claim *77 ant’s activities that day were “significantly greater than usual.” Id. at 256.
Because no such evidence exists here, we REVERSE and REMAND for an evi-dentiary hearing to ascertain whether on the day of Claimant’s myocardial infarction, he was required to perform beyond the range of what he was accustomed to performing on one of his peak days. REVERSED and REMANDED for additional proceedings.
THOMAS, J., concurs; VAN NORTWICK, J., dissents with written opinion.

. Under the 2003 amendment to section 440.09(1), Florida Statutes, the major contributing cause standard requires claimants to prove the industrial accident caused more than 50% of the injury and the resulting need for treatment. Claimant's date of accident preceded the 2003 amendment. Consequently, we do not address whether the amendment superseded Victor Wine for dates of accident occurring after October 1, 2003. Since all claimants have always been required to meet the applicable industrial causation standard, see Harper v. Sebring Int'l Raceway, Inc., 886 So.2d 288 (Fla. 1st DCA 2004), which post-2003 is the 50% plus major contributing cause standard, placing the additional burden of complying with the court-created Victor Wine test seems unduly burdensome and inappropriate. The test was originally established to show at least some industrial causa *75 tion when claimants experience a heart attack while performing their work duties when they suffered from pre-existing heart disease. When Victor Wine was decided, there was no statutory test like the major contributing cause standard as a threshold for establishing industrial causation. Now, a claimant must show the major contributing cause of an injury is industrial, and make this showing by medical evidence. In the case of pre-existing heart disease, the claimant would also have to establish an unusual strain or over-exertion. Unless otherwise specified by the Legislature, all compensable injuries should be required to meet the same standard of proof. See generally, Zundell v. Dade County Sch. Bd., 636 So.2d 8 (Fla.1994). A claimant who establishes his work was the major contributing cause of a myocardial infarction should be able to recover, even if on the day of the myocardial infarction, his duties were less than normal, or comparable to an “average'' day.